1  ADAM R.F. GUSTAFSON
2  Principal Deputy Assistant Attorney General
   Environment & Natural Resources Division
3  SANYA SHAHRASBI (DC Bar #1671001)
4  sanya.shahrasbi@usdoj.gov
   United States Department of Justice
5  Environmental Defense Section
   P.O. Box 7611
6  Washington, D.C. 20044-7611
7  Tel: (202) 305-5810
   Fax: (202) 514-8865
8
9  *Attorney for Defendants*
10

11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12

13
   | | |
   |---|---|
   | CLEAN AIR COUNCIL; COMMUNITIES FOR A BETTER ENVIRONMENT; and NATURAL RESOURCES DEFENSE COUNCIL, INC., | Case No. 8:25-cv-1473-MWF (DFMx) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT (Dkt. No. 1)** |
   | Plaintiffs, | |
   | v. | Date: Mar. 16, 2026 Time: 10:00 a.m. Judge: Hon. Michael W. Fitzgerald Courtroom: 5A |
   | U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator; and NANCY BECK, in her official capacity as Principal Deputy Assistant Administrator for the Office of Chemical Safety and Pollution Prevention, | |
   | Defendants. | |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES ................................................................................ ii

3  INTRODUCTION ............................................................................................... 1
4

5  BACKGROUND .................................................................................................. 2

6  LEGAL STANDARD ........................................................................................... 3
7

ARGUMENT ....................................................................................................... 6
8

9      I.    Plaintiffs have not alleged an injury-in-fact that is actual
            or imminent ...................................................................................... 7
10

11          a.    Plaintiffs have not alleged an injury to their
                  members that is "certainly impending." ..................................... 7
12

13          b.    Plaintiffs alleged "near miss" events are not
                  enough to show "a credible threat that a
14                probabilistic harm will materialize." ...................................... 11

15
            c.    Plaintiffs' theory of injury relies on a speculative
16                chain of events to occur—a theory rejected by both
17                Supreme Court and Ninth Circuit precedent ........................... 13

18          d.    Plaintiffs have not alleged a harm founded on EPA
19                action ...................................................................................... 15

20
       II.   Plaintiffs do not have standing to sue on their own behalf
21           because they have not alleged the challenged action
22           interferes with their core business activities ...................................... 16

23
       III.  Plaintiffs' requested relief is outside the Court's authority
24           under TSCA .................................................................................... 16

25  CONCLUSION .................................................................................................. 18
26

27

28

# TABLE OF AUTHORITIES

**U.S. Constitution**

U.S. CONST. art. III, § 2 ....................................................................................... 1

**Cases**

*Blanz v. Cal. Dep't of Corr., & Rehab.,*
  727 F.3d 917 (9th Cir. 2013) ............................................................... 10

*Cal. Cmtys. Against Toxics v. Trojan Battery Co.,*
  No. 2:18-cv-02189, 2018 U.S. Dist. LEXIS 226453 (C.D. Cal. Dec. 28,
  2018) ..................................................................................................... 15

*Cal. Rest. Ass'n v. City of Berkeley,*
  89 F.4th 1094 (9th Cir. 2024) .......................................................... 5, 11

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013)........................................1, 5, 6, 8, 9, 10, 13, 14 16

*Covington v. Jefferson County,*
  358 F.3d 626 (9th Cir. 2004) ................................................................. 1

*Ctr. for Biological Diversity v. U.S. Dep't of Interior,*
  563 F.3d 466 (D.C. Cir. 2009)............................................................... 9

*Ctr. for Env't Health v. Regan,*
  103 F.4th 1027 (4th Cir. 2024) ........................................................... 17

*D'Lil v. Best Western Encina Lodge & Suites,*
  538 F.3d 1031 (9th Cir. 2008) ............................................................... 4

*Ecological Rts. Found. v. Pac. Lumber Co.,*
  230 F.3d 1141 (9th Cir. 2000) ............................................................. 15

*FDA v. All. for Hippocratic Med.,*
  602 U.S. 367 (2024)............................................................... 4, 5, 6, 16

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.,*
  528 U.S. 167 (2000).......................................................................... 3, 4

*G.B. v. EPA*,
No. CV 23-10345-MWF (AGRX), 2024 WL 3009302 (C.D. Cal. May 8, 2024) ........................................................................................... 6

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982) .......................................................................... 4

*Holden v. Hagopian*,
978 F.2d 1115 (9th Cir. 1992) ......................................................... 4

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .......................................................................... 4

*In re Baroni*,
No. CV 23-1818-MWF, 2023 U.S. Dist. LEXIS 112934 (C.D. Cal. June 28, 2023) .................................................................................................. 5

*Int'l Partners for Ethical Care Inc. v. Ferguson*,
146 F.4th 841 (9th Cir. 2025) ...............................5, 6, 11, 13, 14, 15

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) ...................................................... 3, 4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................3, 5, 6, 14, 17

*Munns v. Kerry*,
782 F.3d 402 (9th Cir. 2015) .......................................................... 5

*NRDC v. EPA*,
735 F.3d 873 (9th Cir. 2013) ..................................................... 11, 12

*Nw. Requirements Utils. v. FERC*,
798 F.3d 796 (9th Cir. 2015) .......................................................... 9

*Or. Advoc. Ctr. v. Mink*,
322 F.3d 1101 (9th Cir. 2003) ........................................................ 4

*Phillips v. U.S. Customs & Border Prot.*,
74 F.4th 986 (9th Cir. 2023) .......................................................... 5

*Rubin v. City of Santa Monica*,

   308 F.3d 1008 (9th Cir. 2002) ................................................................. 18

*San Luis Obispo Mothers for Peace v. NRC*,

   100 F.4th 1039 (9th Cir. 2024) .............................................................. 8, 9

*SDI Labs, Inc. v. Sameday Techs., Inc.*,

   No. CV-23-05619-MWF (MRWx), 2024 U.S. Dist. LEXIS 44386 (C.D. Cal. Jan. 25, 2024) ........................................................................................ 10

*Spokeo, Inc. v. Robins*,

   578 U.S. 330 (2016) ............................................................................. 5, 6

*Summers v. Earth Island Inst.*,

   555 U.S. 488 (2009) ................................................................................. 4

*Susan B. Anthony List v. Driehaus*,

   573 U.S. 149 (2014) ................................................................................. 5

*TransUnion, LLC v. Ramirez*,

   594 U.S. 413 (2021) ................................................................................. 4

*Tucson v. City of Seattle*,

   91 F.4th 1318 (9th Cir. 2024) ............................................................. 6, 18

**Statutes**

15 U.S.C. § 2601(b)(2) ............................................................................... 2

15 U.S.C. § 2605(a) .................................................................................... 2

15 U.S.C. § 2605(c)(1) .............................................................................. 17

15 U.S.C. § 2620(a) .................................................................................... 2

15 U.S.C. § 2620(b)(1) ............................................................................... 2

15 U.S.C. § 2620(b)(2) ............................................................................... 2

15 U.S.C. § 2620(b)(3) ............................................................................... 2

15 U.S.C. § 2620(b)(4) ............................................................................... 3

15 U.S.C. § 2620(b)(4)(B) ..................................................................... 3, 17

Pub. L. No. 94-469, 90 Stat. 2003 (1976) .................................................. 2

**Federal Register**

90 Fed. Reg. 20575 (May 15, 2025)........................................................................3

**Other Authorities**

Petition for Rulemaking, Petition to Prohibit the Use of Hydrogen Fluoride In
   Domestic Oil Refining Under Section 21 and 6(a) of the Toxic Substances
   Control Act (U.S. EPA Feb. 11, 2025), https://downloads.regulations.gov/EPA-
   HQ-OPPT-2025-0102-0002/content.pdf...............................................................3

Ever-present, Oxford English Dictionary, https://www.oed.com/dictionary/ever-
   present_adj.........................................................................................................15

**INTRODUCTION**

Plaintiffs, environmental groups, challenge the United States Environmental Protection Agency's ("EPA's") denial of their petition for rulemaking to ban the use of hydrogen fluoride ("HF") in oil refineries. But Plaintiffs have failed to allege facts that, if true, would demonstrate they have standing to bring this action either on their members' behalf or on their own behalf. Specifically, Plaintiffs do not allege facts that would support an injury in fact or redressability.

Instead, Plaintiffs' alleged injury is built on speculation that events that have never happened in the United States will happen absent some action by the Court. Constitutional standing principles limit the jurisdiction of federal courts to cases or controversies. U.S. CONST. art. III, § 2. This includes limiting review to disputes that are actual and imminent and not speculative.

*First*, Plaintiffs have not alleged an Article III injury. The alleged harm to Plaintiffs' members is not "imminent" or "certainly impending." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013). Likewise, Plaintiffs have not alleged facts showing a "credible threat" that a probabilistic harm to their members will materialize. *Covington v. Jefferson County,* 358 F.3d 626, 641 (9th Cir. 2004). Instead, Plaintiffs' complaint centers around—in their own words—"worst-case" scenarios: HF releases that would spread outside the refinery into their members' communities as a result of unforeseen catastrophic events. The scenarios are hypothetical. Nor have Plaintiffs alleged facts to show the hypotheticals will in fact happen, where they will happen, or when. Instead, their theory of harm rests on past so-called "near-miss" events and a speculative chain of events that makes their members' purported injury attenuated, hypothetical, and not "imminent." Nor have Plaintiffs alleged an injury to their own core business activities.

*Second*, Plaintiffs' asserted harm would likely not be redressed by a favorable decision. As alleged, Plaintiffs' harm is based on a fear of a worst-case scenario at an oil refinery that uses HF near where they live. That fear can

seemingly only be redressed by a complete ban on HF use in refineries—a remedy that the Court does not have the statutory authority to grant.

For these reasons, Plaintiffs' complaint should be dismissed for lack of standing.

## BACKGROUND

Congress enacted the Toxic Substances Control Act ("TSCA") as a national program for assessing and managing the risks of chemicals to human health and the environment. Pub. L. No. 94-469, 90 Stat. 2003 (1976). Section 2(b) of the Act establishes as one of the Act's policies that "adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2601(b)(2).

Section 21 of the Act allows citizens to petition EPA to initiate a proceeding for the issuance, amendment, or repeal of a rule or order under Section 6[1] and other specified sections. *Id.* § 2620(a). A Section 21 petition "shall set forth the facts which it is claimed establish that it is necessary" to initiate the action requested. *Id.* § 2620(b)(1). EPA may hold a public hearing or conduct other investigations or proceedings, as it deems appropriate, to determine whether to grant the petition. *Id.* § 2620(b)(2). EPA must grant or deny the petition within ninety days of filing. *Id.* § 2620(b)(3). If EPA grants the petition, it must "promptly commence an appropriate proceeding" in accordance with certain provisions of the Act. *Id.* If EPA denies the petition, it must publish its reasons in the Federal Register. *Id.*

_____

[1] Under Section 6(a) of TSCA, "[i]f the Administrator determines in accordance with subsection (b)(4)(A) that the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture, or that any combination of such activities, presents an unreasonable risk of injury to health or the environment," the Administrator shall by rule (subject to Section 18 and in accordance with subsection (c)(2)) apply "requirements to such substance or mixture to the extent necessary so that the chemical substance or mixture no longer presents such risk." 15 U.S.C. § 2605(a).

TSCA affords the petitioner a right to judicial review in a district court of the United States if EPA denies the petition or fails to grant or deny the petition within ninety days. *Id.* § 2620(b)(4). In an action respecting a petition to initiate a proceeding to issue a rule or order (rather than amend or repeal one), the petitioner "shall be provided an opportunity to have such petition considered by the court in a de novo proceeding." *Id.* § 2620(b)(4)(B). If the petitioner successfully demonstrates the required statutory elements "to the satisfaction of the court by a preponderance of the evidence," then "the court shall order [EPA] to initiate the action requested by the petitioner." *Id.*

In February 2025, Plaintiffs submitted their administrative petition to EPA.[2] EPA denied the petition in May 2025 and published its reasoning in the Federal Register. 90 Fed. Reg. 20575 (May 15, 2025). Within ninety days, Plaintiffs commenced this action.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of any claim over which the court lacks subject-matter jurisdiction. Plaintiff shoulders the burden to establish the predicates to federal jurisdiction, including standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In the absence of standing, a matter is not justiciable. *See id.* A plaintiff must demonstrate standing at the "outset" of a case. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 180 (2000); *see also Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056-57 (9th Cir. 2023) ("[A]t the pleadings stage, the plaintiff must allege sufficient facts that, taken as true, demonstrate each element of Article III standing . . . . If the plaintiff fails to do so, the complaint is subject to dismissal at the outset.

---

[2] Petition for Rulemaking, Petition to Prohibit the Use of Hydrogen Fluoride In Domestic Oil Refining Under Section 21 and 6(a) of the Toxic Substances Control Act (U.S. EPA Feb. 11, 2025), https://downloads.regulations.gov/EPA-HQ-OPPT-2025-0102-0002/content.pdf.

1    . . .") (citation modified). Standing is assessed based on "the facts as they existed at
2    the time the plaintiff filed the complaint." *D'Lil v. Best Western Encina Lodge &*
3    *Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008). Although a reviewing court accepts
4    the complaint's factual allegations as true, it does not accept "conclusory
5    allegations" or "conclusory legal assertions." *Holden v. Hagopian*, 978 F.2d 1115,
6    1121 (9th Cir. 1992) (quotation marks omitted).
7         To establish standing under Article III, a plaintiff must demonstrate a
8    "personal stake" in the dispute, *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 423
9    (2021), which is supported by "specific allegations" of "imminent harm" to a
10   "concrete interest." *Summers v. Earth Island Inst.,* 555 U.S. 488, 494-98 (2009).
11   Organizational plaintiffs can demonstrate injury either by showing that the
12   challenged action harms its organizational interests, *see Havens Realty Corp. v.*
13   *Coleman*, 455 U.S. 363, 379 (1982), or by showing that at least one of its members
14   can demonstrate individual standing—meaning "its members would otherwise
15   have standing to sue in their own right," *see Or. Advoc. Ctr. v. Mink*, 322 F.3d
16   1101, 1109 (9th Cir. 2003) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*,
17   432 U.S. 333, 343 (1977)). This means that an organizational plaintiff, bringing an
18   action on their members' behalf, must allege their member "(1) [] has suffered an
19   'injury in fact' that is (a) concrete and particularized and (b) actual or imminent,
20   not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged
21   action of the defendant; and (3) it is likely, as opposed to merely speculative, that
22   the injury will be redressed by a favorable decision." *Jones*, 74 F.4th at 1057
23   (quoting *Friends of the Earth*, 528 U.S. at 180-81). If plaintiffs are not relying on
24   associational standing, or standing on their members' behalf, they would still need
25   to establish injury-in-fact, traceability, and redressability to their organization.
26   *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394–95 (2024). Regardless, when
27   a plaintiff challenges the government's "unlawful regulation (or lack of regulation)
28

of *someone else*," "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* at 382 (citing *Lujan*, 504 U.S. at 562).

For a harm to be concrete and particularized it must "actually exist[]." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). The harm must also be "actual or imminent," meaning that threat of future injury must be "certainly impending" or there must be a "'substantial risk' that the harm will occur"—not just a possibility. *Clapper*, 568 U.S. at 409-14; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). The Ninth Circuit has further held that "[t]o establish 'actual or imminent' injury, the [plaintiff] must show a credible threat that a probabilistic harm will materialize." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024) (citation modified); *see also Int'l Partners for Ethical Care Inc. v. Ferguson*, 146 F.4th 841, 852 (9th Cir. 2025) (holding that probabilistic harm "merely recognizes" that a plaintiff may show injury-in-fact by showing that his likelihood of harm has "significantly increased, bringing his potential for injury from certainly imaginable to 'certainly impending'"). The Ninth Circuit has made clear that "although probabilistic harm can create standing, it does not replace the foundational rule that a future injury must be imminent in order to satisfy the injury-in-fact requirement." *Int'l Partners*, 146 F.4th at 852 (citing *Lujan*, 504 U.S. at 564 n.2). Thus, allegations that rest on a "highly attenuated chain of possibilities" are not sufficient to show a harm is imminent. *Clapper*, 568 U.S. at 409-10; *see also Int'l Partners*, 146 F.4th at 851; *In re Baroni*, No. CV 23-1818-MWF, 2023 U.S. Dist. LEXIS 112934, at *26 (C.D. Cal. June 28, 2023); *Munns v. Kerry*, 782 F.3d 402, 409-11 (9th Cir. 2015) (holding that plaintiff's theory of future harm was too speculative to be "certainly impending" or "present a substantial risk" of occurrence when the "chain of events" leading to injury from a policy was too hypothetical and attenuated). Moreover, an organization does not establish standing on its own behalf simply by alleging the challenged action

1  frustrates its mission or forces it to divert resources—instead it must plead injury to

2  its "core business activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. at 395–

3  96.

4        Standing also requires a showing of redressability. *Lujan*, 504 U.S. at 561.

5  Namely that there is a "substantial likelihood" that the relief sought would redress

6  the injury. *Tucson v. City of Seattle*, 91 F.4th 1318, 1325 (9th Cir. 2024); *see also*

7  *G.B. v. EPA*, No. CV 23-10345-MWF (AGRX), 2024 WL 3009302, at *3 (C.D.

8  Cal. May 8, 2024) (holding that to establish redressability, plaintiffs must show

9  that the relief that they seek is "both (1) substantially likely to redress their

10  injuries; and (2) within the district court's power to award").

11                                **ARGUMENT**

12        Plaintiffs fail to allege the first and third elements of standing—they have

13  not alleged an injury-in-fact that is redressable. Their alleged harm to their

14  members is not actual or imminent and instead is conjectural and hypothetical.

15  *Spokeo*, 578 U.S. at 339.  Plaintiffs' theory of harm is that their members are living

16  with "worry" and "fear" that a possible catastrophic accident at an oil refinery

17  would release HF outside the perimeter of the refinery and harm their members,

18  their members' loved ones, and the environment. But Plaintiffs have not pleaded

19  any facts that show that such an event is "certainly impending." Instead, their

20  theory of harm is premised on the mere possibility of unprecedented "worst-case"

21  scenarios coupled with purported "near-miss" incidents to create present injury to

22  their members. *Clapper*, 568 U.S at 416 (holding that a party cannot "manufacture

23  standing merely by inflicting harm on themselves based on their fears of

24  hypothetical future harm that is not certainly impending"). Such a hypothetical

25  event rests on a speculative chain of "ifs and shoulds" that must occur in order for

26  this type of accident to be considered likely to occur at some point in the future.

27  *Int'l Partners*, 146 F.4th at 851. Thus, there is no "certainly impending" harm to

28  give rise to standing here. *Clapper*, 568 U.S at 409-10. And Plaintiffs have also not

pleaded an injury to their organization's core business activities to show organizational standing.

And even if the Court were to rule in Plaintiffs' favor on injury, the Court's authority under Section 21 is limited. The Court cannot compel EPA to take action by the dates requested or prohibit the use of HF in oil refineries. Thus, there is not a "substantial likelihood" that Plaintiffs' alleged fear of living near oil refineries using HF can be remedied absent a ban.

## I.   Plaintiffs have not alleged an injury-in-fact that is actual or imminent.

### a.   Plaintiffs have not alleged an injury to their members that is "certainly impending."

The alleged harm to Plaintiffs' members stems from living near oil refineries that use HF. Their asserted harm is "worr[y]," "fear[]," and "concern[]" that *if* a catastrophic event causes an HF release and that release was to reach their communities, then it would harm them, their loved ones, and their communities. Compl. ¶¶ 12-13, 16, 18-21 (emphases added).[3] Plaintiffs' members' alleged harm is based on the possibility of a scenario that has not happened and that Plaintiffs

_____

[3] The allegations describing individual members identified in the complaint use uncertain hypothetical language to describe their purported injury. For example: one member lives within the "*potential*" impact zone and is worried about her safety and that of her mother and grandkids; another member is concerned about that harm that an HF release "*could*" cause; another member feels uneasy and unsafe due to the "ever-present danger posed by HF" and is concerned about "*possible*" damage that released HF "*could*" cause; another member "fears that he *may* face serious injury or death in the event of an HF release" and that a HF release "would also cause ecological harm" where the member enjoys observing birds and wildlife; another member fears for her safety because she lives four miles away from a facility; and lastly another member is "deeply worried that *if* an HF release occurred" she and her father would have to shelter in place in a small bathroom. Compl. ¶¶ 12-13, 16, 18-21 (emphases added).

have not pleaded will happen. Plaintiffs also do not identify what has changed now, or any other agency action that has changed the status quo, that makes their alleged harm anything other than conjectural. *See, e.g.*, *San Luis Obispo Mothers for Peace v. NRC*, 100 F.4th 1039, 1054 (9th Cir. 2024) (holding that plaintiffs had shown an injury-in-fact when they lived within 50 miles of a nuclear facility, the facility's license was going to expire, and the agency recognized age-related degradation, which was prolonged by the agency's decision, could lead to safety and environmental risks for persons living within the 50 mile radius of a facility that differed from the risks considered in evaluating the initial license). Here, there is no agency action that would increase the risk of an HF release. Plaintiffs only "belie[ve]" that it is "reasonably foreseeable" that at some unknown and unspecified point in time and location that "refinery-related releases" will happen that would result in a release that would impact them. Compl. ¶ 94. As such, Plaintiffs' members' alleged harm is based on a hypothetical "possible future injury" and not an "imminent injury."

The Supreme Court's decision in *Clapper* is instructive here. In *Clapper*, Plaintiffs challenged Section 702 of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1881a, which permits the Attorney General and the Director of National Intelligence to acquire foreign intelligence information by authorizing the surveillance of individuals who are not "United States persons" and are reasonably believed to be located outside the United States. *Clapper*, 568 U.S. at 401. Plaintiffs, individuals who alleged that they engaged in sensitive international communications with individuals who they believed were the targets of § 1881a, requested a preliminary injunction against the surveillance. *Id.* The Supreme Court rejected plaintiffs' theory that an "objectively reasonable likelihood" of injury was sufficient to show injury and found that their "theory of *future* injury" was "too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Id.* The Court pointed out that the plaintiffs did not have

1    "actual knowledge" of the governments' targeting practices and had set forth "no

2    specific facts" that demonstrated that the communication of their foreign contacts

3    would be targeted. *Id.* at 411-12. Moreover, the Court held that the plaintiffs could

4    not manufacture standing by inflicting harm on themselves based on their fears of

5    hypothetical future harm that is not certainly impending. *Id.* at 416. The Ninth

6    Circuit has repeatedly followed *Clapper* and the Supreme Court's finding that a

7    "substantial risk" of harm may be enough to find future injury. *San Luis Obispo*

8    *Mothers for Peace*, 100 F.4th at 1054; *Nw. Requirements Utils. v. FERC*, 798 F.3d

9    796, 805 (9th Cir. 2015) (citing *Clapper*, 568 U.S. at 414 n.5).

10            Regardless of whether the Court looks to "certainly impending" injury or

11    "substantial risk" of injury, Plaintiffs' theory of future injury is too speculative.

12    Plaintiffs allege their members fear living near an oil refinery that could at some

13    point experience a significant release of HF, but that fear of a hypothetical future

14    harm is based on an event that is not certainly impending and there are no alleged

15    facts that show that there is a substantial risk of a catastrophic event that would

16    result in a release that would impact any Plaintiff member. As in *Clapper*, where

17    the Court found the plaintiffs there did not have actual knowledge of the

18    government's targeting practices, here Plaintiffs' members' fear of a catastrophic

19    HF release is similarly speculative because they do not have actual knowledge that

20    a HF release that could impact them will or is likely to occur, and have likewise

21    plead "no specific facts" that demonstrate that such a hypothetical release will

22    reach outside the oil refinery and to Plaintiffs' neighborhoods. *Cf. Ctr. for*

23    *Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir.

24    2009) (finding no standing because plaintiffs could "only aver that any significant

25    adverse effects of climate change 'may' occur at some point in the future").

26            The complaint includes maps and tables of hypothetical outcomes of what

27    Plaintiffs describe as "worst-case" scenarios of "how far the resulting HF cloud

28    could spread." Compl. ¶¶ 64, 67. But there are no allegations showing that a

1    "worst-case scenario" (or even something close to that) has ever happened in U.S.

2    history. The release at the Galveston Bay Refinery in Texas City, Texas

3    extensively cited by Plaintiffs, which occurred 38 years ago, allegedly involved

4    "[t]ens of thousands of pounds of HF" that spread along a "three-mile path from

5    the release point." Compl. ¶ 83, 87. This comes nowhere near Plaintiffs' worst-

6    case scenario estimates of 110,000 to 890,000 pounds of an HF release, or the

7    release zone estimates that Plaintiffs identify in their complaint. Compl. ¶¶ 4, 87,

8    64, 67. Plaintiffs do not allege facts to show that a "worst-case" scenario is

9    imminent or provide any specifics to support a finding of a high probability of such

10   a scenario happening.

11       Moreover, there is also no "substantial risk" such an event will occur. The

12   only discussion regarding the imminence of harm is based on Plaintiffs' conclusory

13   allegation upon "on information and belief"[4] that past releases were caused or

14   exacerbated by factors including "aging infrastructure, failure to implement best

15   practices… and extreme weather." Compl. ¶ 94. And because of this, Plaintiffs

16   assert that "refinery-related releases . . . are reasonably foreseeable" and will be

17   "even worse" than the ones that have occurred. *Id*. But to satisfy the injury-in-fact

18   element of standing even a "reasonably foreseeable" event must be imminent or

19   there must be a "substantial risk" that it will occur. Plaintiffs do not allege that any

20   supposed "reasonably foreseeable" release is imminent or that it would be

21   devasting enough to reach outside the confines of the oil refinery and harm

22   Plaintiffs' members. Instead, all of Plaintiffs' allegations are based on "possible

23   future injury" that is not enough to confer standing. *Clapper*, 568 U.S at 409.

24

25   [4] Even at the pleading stage, "[c]onclusory allegations upon information and belief,

26   without specific factual allegations, are insufficient to state a claim." *SDI Labs,
     Inc. v. Sameday Techs., Inc.*, No. CV-23-05619-MWF (MRWx), 2024 U.S. Dist.

27   LEXIS 44386, at *4 (C.D. Cal. Jan. 25, 2024) (citing *Blanz v. Cal. Dep't of Corr.,*

28   *& Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013)).

1    Plaintiffs' theory of standing is limitless. If the Court accepts that it is
2  enough to simply live near a refinery that uses a chemical that is dangerous when
3  released during a catastrophic event as "certainly impending," then individuals
4  would have standing to challenge agency actions based on any number of
5  farfetched theories. For example, a homeowner who lives near an airport could sue
6  the Federal Aviation Administration for denying their petition to change the
7  handling of airplane fuel, because if a catastrophic event were to occur, fuel could
8  spread and cause harm to the homeowner and their property. Surely, this is not the
9  envisioned injury-in-fact requirement necessary for a case or controversy.

10        **b.  Plaintiffs alleged "near miss" events are not enough to show "a**
11        **credible threat that a probabilistic harm will materialize."**

12    When determining whether an injury is imminent, courts in the Ninth Circuit
13  also examine whether there is a credible threat that a probabilistic harm will
14  materialize. *Int'l Partners*, 146 F.4th at 852. But the court has made clear that the
15  "probabilistic" nature of the injury-in-fact requirement means an "increased … risk
16  of future harm" which may be sufficient to confer standing but does not replace the
17  "foundational rule" that a future injury must be imminent. *Id.* Perhaps in
18  recognition of their failure to allege facts supporting a credible threat of a "worst-
19  case" scenario (indeed, there has not been such a scenario in U.S. history),
20  Plaintiffs look to bolster their allegations of fear based on past so-called "near-
21  miss" events and discrete releases of HF at refineries. Compl. ¶¶ 77, 83, 85, 87-89,
22  91. But the so-called "near miss" events also are not enough to show a "credible
23  threat that a probabilistic harm will materialize." *Cal. Rest. Ass'n v. City of*
24  *Berkeley*, 89 F.4th 1094, 1100 (9th Cir. 2024).

25    The Ninth Circuit's analysis in *NRDC v. EPA* is helpful here. There, the
26  court found standing where the probability of exposure to risk of harm was "quite
27  high." *NRDC v. EPA*, 735 F.3d 873, 879 (9th Cir. 2013). The court examined the
28  probability of exposure to the risk of harm and whether the plaintiff members

1    could avoid exposing their children to the newly approved pesticide that was found

2    in textiles. The court found that the probability of exposure was "quite high"

3    because of the ubiquity of textiles and that the probability that members would be

4    able to avoid exposing their children to the risk of harm was quite low. *Id.* at 879.

5    The court held that EPA's decision to conditionally register the pesticide had

6    increased the threat of future harm to plaintiffs' members. *Id.* at 878. As such,

7    plaintiffs had shown there was a "credible threat" of exposure and that they would

8    not be able to eliminate the threat from their children's lives. *Id.* at 879.

9         Here, Plaintiffs fail to allege facts to support a finding that the probability of

10   exposure is "quite high." There is no potential harm for Plaintiffs' members to

11   avoid because there is no "credible threat" of a catastrophic release of HF exposure

12   to begin with. Unlike the conditionally approved pesticide at issue in *NRDC v.*

13   *EPA*, here EPA's decision is not changing the probability of exposure to the risk of

14   harm to Plaintiffs, let alone increasing that risk. The probability of exposure to HF

15   before EPA's review and after is the same. And that probability of exposure was,

16   and still is, very low. By Plaintiffs' own accounts, the last incident that resulted in

17   a HF release outside of an oil refinery that led to injuries to the nearby population

18   was in 1987. Compl. ¶ 87. And the last purported "near-miss" incident was in

19   2019. Compl. ¶¶ 87, 89. Plaintiffs plead that "since the 1987 Texas City release, at

20   least 26 refineries still using HF for alkylation have had an HF or hydrofluoric acid

21   leak" and "[a]t least 21 refineries have had an explosion, fire, or other incident

22   severe enough to require shelter-in-place or evacuation orders for people living or

23   working outside refinery boundaries." Compl. ¶ 91. Yet, Plaintiffs have not

24   pleaded that any of the HF releases since 1987 extended outside the confines of the

25   refinery and resulted in HF-related exposures let alone injuries to the nearby

26   population or environment. Nor have Plaintiffs alleged that any of these 21 refinery

27   incidents were related to a *HF* release that caused shelter-in-place or evacuation

28   orders for people outside the refinery.

1    Plaintiffs broadly characterize American oil refineries as outdated, ill-

2   maintained, inadequately regulated, and "prone to failures and releases." Compl. ¶¶

3   8, 90, 92, 94. But Plaintiffs also acknowledge that the refineries have risk

4   management plans in place and have mitigated some of the releases. Compl. ¶¶ 63,

5   89. This recognition further supports why there is no "credible threat" that a

6   probabilistic harm will materialize, and Plaintiffs' allegation of future injury is not

7   imminent. Just because some harm is possible does not make it probable. *Clapper*,

8   568 U.S. at 409 (stating that "allegations of *possible* future injury" are not

9   sufficient to show a threatened injury is *certainly impending* to constitute injury in

10   fact).

11       **c.  Plaintiffs' theory of injury relies on a speculative chain of events
12            to occur—a theory rejected by both Supreme Court and Ninth
13            Circuit precedent.**

14    Finally, Plaintiffs' theory of member standing rests on a long and

15   speculative chain of causation rejected by both the Supreme Court and Ninth

16   Circuit. *Clapper*, 568 U.S. at 401, 410 (holding that plaintiffs' "highly speculative

17   fear" relied on a "highly attenuated chain of possibilities" and was "too

18   speculative" to constitute a cognizable injury). As in a recent Ninth Circuit case,

19   *International Partners for Ethical Care v. Ferguson*, Plaintiffs' theory of future

20   injury rests on a "convoluted series of events [to] transpire[]." 146 F.4th at 850-51.

21   In *International Partners*, the plaintiffs were organizations and parents of minor

22   children who brought a constitutional challenge against a state statute that

23   regulated the rights and privileges of minors, particularly minors who are

24   transgender. *Id.* at 843-44. The statutes permitted minor children to seek mental

25   health care and treatment without the consent of the adolescent's parent. *Id.* at 844.

26   The Ninth Circuit agreed with the district court and found that plaintiffs did not

27   have standing to bring such a claim because their theory of future injury rested on a

28   "convoluted series of events [to] transpire[]." *Id.* at 850-51. Even though plaintiffs

1    had alleged their minor child was experiencing gender dysphoria and had socially

2    transitioned at school, the court rejected making an inference that the child was

3    likely to run away in the future and come within reach of the challenged statute. *Id.*

4            Here, Plaintiffs are asking this Court to make an unsupported inference as

5    well. Namely that there is an impending accident that will cause a HF release of

6    such scale that it will harm Plaintiffs' members or the environment. For that to

7    happen, a similarly attenuated chain of events must occur: (1) an accident happens

8    at a particular oil refinery near Plaintiffs' members; (2) mitigation measures in

9    place by the refinery would fail; (3) the accident causes the release of HF; (4)

10   response actions would not contain the release; (5) the amount of HF that is

11   released is significant enough to move beyond the confines of the refinery; (6)

12   weather conditions are such that the HF spreads into the Plaintiff members'

13   communities; and (7) the HF release injures Plaintiffs' members, their family

14   members, communities, and the local environment. A similarly attenuated chain of

15   events would need to happen for HF that is transported by truck or rail—namely

16   some intervening event such as an accident or derailment would need to occur,

17   coupled with the weather and inefficient mitigation, that would release HF into one

18   of Plaintiff members' communities.[5] Notably, Plaintiffs did not allege one instance

19   where an accident by truck released HF to neighboring areas. Compl. ¶ 71. And the

20   most recent example they provide for railcar derailments carrying HF occurred

21   over a decade ago. Compl. ¶ 77. In addition, Plaintiffs' allegation that HF is

22   currently transported by train is solely based on "information and belief." Compl.

23   ¶ 75. These events do not show "imminent harm," "certainly impending" harm, or

24   a "substantial risk" of harm or even "probabilistic harm" will occur. *Lujan*, 504

25   U.S. at 564; *Clapper*, 568 U.S. at 410-14, 414 n.5; *Int'l Partners*, 146 F.4th at 852.

26

27   ───────────────

28   [5] Plaintiffs' complaint alleges transportation related releases, but Plaintiffs'
     members alleged harm only stems from their proximity to an oil refinery.

Plaintiffs' alleged harm relies on "an enormity of 'ifs' and 'shoulds,' without any detail or explanation as to when or why these contingencies might occur." *Int'l Partners*, 146 F.4th at 851.

### d. Plaintiffs have not alleged a harm founded on EPA action.

Plaintiffs allege their members are living with "ever-present danger" and fear. Compl. ¶¶ 16, 19, 21. "Ever-present" is defined as something that is "always there" or "existing or occurring at all times,"[6] and Plaintiffs have not pleaded why this purportedly ever-present danger is now certainly impending. Plaintiffs have not alleged that EPA's decision has changed their conduct or how EPA's denial of their petition is affecting them now in concrete ways. *See Cal. Cmtys. Against Toxics v. Trojan Battery Co.*, No. 2:18-cv-02189, 2018 U.S. Dist. LEXIS 226453, at *9 (C.D. Cal. Dec. 28, 2018) (holding that plaintiffs had shown an injury in fact from defendant's discharges when plaintiff member was deterred from engaging in recreational activities in the water bodies from fear of harm); *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1150 (9th Cir. 2000) (finding injury in fact when plaintiff is deterred from "fully enjoying" recreational activities in and around a body of water due to defendant's conduct). On the contrary, Plaintiffs here are alleging that they continue their day-to-day lives going shopping, commuting to work, engaging in social activities, exercising, and running errands. Compl. ¶¶ 19, 21 Plaintiffs have not alleged that EPA's decision to deny their TSCA petition has affected them in concrete ways. Nor have Plaintiffs alleged increased fear or changed practices in response to EPA's decision. And even if Plaintiffs did allege that EPA's decision has increased their fear or changed their actions, Plaintiffs would still be "inflicting harm on themselves based on their fears

---

[6] *Ever-present*, Oxford English Dictionary, https://www.oed.com/dictionary/ever-present_adj.

1    of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S at
2    416.

3    **II.    Plaintiffs do not have standing to sue on their own behalf because
         they have not alleged the challenged action interferes with their core
4        business activities.**

5
6            Plaintiffs primarily rely on their individual members' interest to establish
7    standing. But to the extent Plaintiffs intend to rely on organizational standing, they
8    have not made the necessary showing. An organization cannot establish standing
9    by alleging the challenged action frustrates its mission and required it to divert
10   resources. Rather, an organization must satisfy the "usual standards"—injury in
11   fact, causation, and redressability—which it can do by showing that the challenged
12   "action[] directly affected and interfered with [its] core business activities." *Food
13   & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394-95 (2024).

14           Here, Plaintiffs have not alleged any injury to any of their core business
15   activities. Plaintiffs allege that they have "helped organize concerned residents,"
16   "advocated for state and local actions to eliminate the use of HF" or "advocated for
17   stringent regulations of toxic chemicals." Compl. ¶¶ 10, 14, 17. But the agency's
18   action in no way interferes with the Plaintiffs' advocacy. EPA's denial of their
19   petition does nothing to prevent the organizations from continuing to advocate for
20   more regulation of toxic chemicals, working to eliminate the use of HF at local
21   refineries, or advocating to reduce toxic pollution from refineries.

22           Because Plaintiffs have alleged no harm to their core activities, they lack
23   standing as an organization as well.

24   **III.    Plaintiffs' requested relief is outside the Court's authority under
          TSCA.**
25

26           Even if Plaintiffs could show an injury caused by EPA's denial of their
27   petition, it is unclear that a favorable ruling by this Court could redress Plaintiffs'
28   alleged injuries. Plaintiffs must show that it is "likely, as opposed to merely

1  speculative, that the injury will be redressed by a favorable decision." *See Lujan*,

2  504 U.S. at 561 (quotation omitted).

3       Under TSCA, the Court can only "order the [EPA] to *initiate* the action

4  requested by the petitioner." 15 U.S.C. § 2620(b)(4)(B) (emphasis added).

5  Moreover, the Court cannot force EPA to "publish a proposed rule within 1 year of

6  the court's ruling" and "to publish a final rule within 2 years of the court's ruling"

7  as requested by Plaintiffs. Compl. ¶ 112; *see, e.g.*, *Ctr. for Env't Health v. Regan*,

8  103 F.4th 1027, 1038 (4th Cir. 2024) (holding that under § 2620(b)(4)(B) a court

9  can only provide an order directing the EPA to initiate a proceeding for a rule or

10 order, and, in the context of a petition seeking testing of substances, EPA will

11 determine the best testing protocols and methodologies to utilize). Plaintiffs seem

12 to have adopted this timeline from TSCA's requirement that EPA publish a

13 proposed rule not later than 1 year and a final rule and not later than 2 years "after

14 the date on which the final risk evaluation regarding the chemical substance is

15 published." 15 U.S.C. § 2605(c)(1). Here, there is no risk evaluation that would

16 trigger this timeline, and a favorable decision by the Court would also not spark the

17 creation of a final risk evaluation. Plaintiffs are essentially asking for relief that is

18 not provided under Section 21.

19       More importantly, any order by the Court directing EPA to initiate a

20 rulemaking proceeding does not necessarily mean that the outcome of that

21 proceeding will result in a ban on HF use in oil refineries. EPA would have to go

22 through the rulemaking process, solicit comments, review comments, do a cost-

23 benefit analysis, and make a determination on whether a ban on HF use in the

24 industry would be necessary to eliminate the unreasonable risk presented by the

25 chemical, as opposed to exercising other regulatory tools of TSCA under Section

26 6(a). And it is unclear whether anything less than a ban on the substance would

27 alleviate Plaintiffs' alleged "fear[]," "worr[y]," and "concern[]." Thus, it is very

28 much "speculative" and not "substantial[ly] like[ly]" that the injury Plaintiffs'

members allege would be redressed by a favorable decision here. *Tucson v. City of Seattle*, 91 F.4th at 1325; *see Rubin v. City of Santa Monica*, 308 F.3d 1008, 1020 (9th Cir. 2002) (holding that a "purely speculative" favorable outcome will not suffice to establish the redressability prong). So even if the Court ordered EPA to initiate a proceeding and EPA, after notice and comment, decides to regulate HF in a way other than banning it, Plaintiffs' members' concerns would still exist because they would still live near HF using oil refineries. The Court does not have the power to grant the kind of relief that would redress Plaintiffs' asserted injury.

## CONCLUSION

Plaintiffs lack standing to bring this suit. The Court should dismiss the complaint for lack of subject-matter jurisdiction.


Dated: December 5, 2025              ADAM R.F. GUSTAFSON
                                     Principal Deputy Assistant Attorney General
                                     United States Department of Justice
                                     Environment & Natural Resources Division

                                     /s/ *Sanya Shahrasbi*
                                     SANYA SHAHRASBI
                                     Trial Attorney
                                     Environmental Defense Section
                                     Environment & Natural Resources Division
                                     Ben Franklin Station P.O. Box 7611
                                     Washington, D.C. 20044
                                     Ph: (202) 305-5810
                                     sanya.shahrasbi@usdoj.gov

                                     *Attorney for Defendants*

1

## **Certificate of Compliance**

2          The undersigned, counsel of record for Defendants, certifies that this brief

3    contains 5,927 words, which complies with the word limit of L.R. 11-6.1.

4

5    Dated: December 5, 2025              */s/ Sanya Shahrasbi*

6                                         SANYA SHAHRASBI
                                          *Attorney for Defendants*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28