Jason S. Mills (SBN 225126)
jason.mills@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
300 S. Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 612 7387
Facsimile: +1 213 612 2501

Justin A. Savage (*pro hac vice*
forthcoming)
jsavage@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Telephone: +1 202 736 8000
Facsimile: +1 202 736 8711

Brooklyn Hildebrandt (SBN 350707)
bhildebrandt@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

Nima H. Mohebbi (SBN 275453)
Nima.mohebbi@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: +1 310 595 9500
Facsimile: +1 310 595 9501

*Attorneys for Western States Petroleum
Association*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAN AIR COUNCIL; COMMUNITIES FOR A BETTER ENVIRONMENT; and NATURAL RESOURCES DEFENSE COUNCIL, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator; and NANCY | Case No. 8:25-cv-01473-MWF-DFMx Assigned to Hon. Michael W. Fitzgerald <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WESTERN STATES PETROLEUM ASSOCIATION'S UNOPPOSED MOTION TO INTERVENE** |

1  BECK, in her official capacity as Principal
2  Deputy Assistant Administrator for the
   Office of Chemical Safety and Pollution
3  Prevention,

4              Defendants.

| | | |
|---|---|---|
| Hearing Time: | 10:00 a.m. | |
| Hearing Date: | March 16, 2026 | |
| Courtroom: | 5A | |
| | | |
| Action Filed: | July 8, 2025 | |
| Trial Date: | Not set | |

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

I.  INTRODUCTION ...................................................................................1

II.  BACKGROUND ...................................................................................2

    A.  WSPA Is a Nonprofit Association that Includes Western HF Refineries. ...................................................................................2

    B.  Plaintiffs Seek an Order Compelling EPA to Ban All Uses of HF by WSPA's Member Refineries. .........................................................3

    C.  The Litigation Is in the Early Stages. ...............................................5

III.  ARGUMENT ...................................................................................5

    A.  WSPA Is Entitled to Intervene as of Right. .....................................5

        1.  WSPA Is a Key Stakeholder with Significantly Protectable Interests. .........................................................7

        2.  The Disposition of This Action Would Impair WSPA's Interests. .........................................................8

        3.  This Motion Is Timely. ...............................................9

        4.  The Existing Parties Do Not Adequately Represent WSPA's Interests. .........................................................11

    B.  Alternatively, WSPA Satisfies the Standard for Permissive Intervention. .........................................................13

IV.  CONCLUSION ...................................................................................15

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Canatella v. California,*
  404 F.3d 1106 (9th Cir. 2005) ...................................................................... 9

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) .......................................................... 7, 10, 11

*Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Morrow-Meadows Corp.,*
  No. CV16-7454-MWF(ASx), 2017 WL 11631998 (C.D. Cal. Aug. 1, 2017) ....... 14

*Freedom from Religion Found., Inc. v. Geithner,*
  644 F.3d 836 (9th Cir. 2011) ............................................................... 13, 14

*Fund for Animals, Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) .................................................................. 12

*Kelly v. Ironshore Indem., Inc.,*
  No. 2:22-cv-05178-MEMF-JEMx, 2023 WL 12022685 (C.D. Cal. Sept. 15, 2023)
  .................................................................................................................. 6

*League of United Latin Am. Citizens v. Wilson,*
  131 F.3d 1297 (9th Cir. 1997) .................................................................. 10

*United States ex rel. McGough v. Covington Techs. Co.,*
  967 F.2d 1391 (9th Cir. 1992) .................................................................. 10

*Smith v. L.A. Unified Sch. Dist.,*
  830 F.3d 843 (9th Cir. 2016) ...................................................................... 9

*Sw. Ctr. for Biological Diversity v. Berg,*
  268 F.3d 810 (9th Cir. 2001) ...........................................................*passim*

*United States v. City of Los Angeles,*
  288 F.3d 391 (9th Cir. 2002) ................................................................. 6, 7

*W. Watersheds Project v. Haaland,*
  22 F.4th 828 (9th Cir. 2022) .................................................................... 10

iv

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) .............................................................. 6, 7

*Woods v. Cnty. of Los Angeles*,
  No. 2:20-CV-04474-AB (MAAx), 2022 WL 19829548 (C.D. Cal. Mar. 14, 2022)
  ...................................................................................................... 9

**Statutes**

15 U.S.C. § 2620 .................................................................................. 1, 4

**Other Authorities**

29 C.F.R. § 1910.119 ............................................................................. 12

49 C.F.R. pt. 172 ................................................................................... 12

90 Fed. Reg. 20,575 (May 15, 2025) ....................................................... 4

Fed. R. Civ. P. 24 ........................................................................ *passim*

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

## I.    INTRODUCTION

Western States Petroleum Association ("WSPA") respectfully moves to intervene in this action under Federal Rule of Civil Procedure 24.  No party to this action opposes WSPA's motion.  *See* Decl. of Jason Mills (attached hereto).  As explained below, WSPA satisfies the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a) and therefore seeks to intervene as of right and, alternatively, moves for permissive intervention under Rule 24(b).

WSPA is the leading trade association representing oil and gas companies across five western states, including California.  Its members operate refineries that supply essential transportation fuels to the U.S. public, the U.S. military, and critical U.S. infrastructure projects.  Several member refineries transport and use hydrogen fluoride ("HF") to produce high-octane gasoline—a process long governed by comprehensive federal and state regulations, as well as rigorous voluntary industry standards designed to ensure the safe and responsible handling of HF.

Plaintiffs' lawsuit, brought under Section 21(b)(4) of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2620(b)(4), seeks an order compelling the U.S. Environmental Protection Agency ("EPA") to ban HF in domestic refining.  *See* Dkt. 1 ("Compl.").  If granted, such relief would disrupt and jeopardize WSPA's member refineries that rely on HF to produce essential motor gasoline that keeps the economy running.

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

WSPA seeks intervention to protect its substantial and concrete interests—interests that neither Plaintiffs nor EPA could adequately represent—and to provide the Court with critical technical and operational analysis and facts bearing directly on the central issues in dispute.  Because WSPA's motion is unopposed by all parties to this action and meets all relevant standards, WSPA respectfully requests that the Court grant its motion and allow it to intervene in this case.

## II.    BACKGROUND

### A.    WSPA Is a Nonprofit Association that Includes Western HF Refineries.

WSPA is a nonprofit trade association, which represents the interests of the petroleum and petroleum-products industry in five western states, including Arizona, California, Nevada, Oregon, and Washington.  *See* Decl. of Jodie Muller ¶ 2 (attached hereto).  Companies in this industry within the ambit of WSPA conduct the bulk of petroleum exploration, production, refining, transportation, and marketing in these five states.  *Id.*  Founded in 1907, WSPA is dedicated to ensuring that Americans continue to have reliable access to petroleum and petroleum products through policies that are socially, economically, and environmentally responsible.  *See id.* ¶ 3–4.  WSPA's member refineries supply petroleum and petroleum products to the U.S. public, businesses, and military, for uses in transportation and critical infrastructure, among other sectors.  *Id.* ¶ 6.

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

Since World War II, refineries have used HF in fuel production. Alkylation units in refineries produce alkylate, a necessary blending component for high-octane gasoline and aviation fuel. The alkylation process is initiated by one of two primary catalysts: HF or sulfuric acid. HF and sulfuric acid technology are not interchangeable. HF and sulfuric units have completely different designs, footprints, and technological requirements.

For decades, several of WSPA's members have relied on the continued use of HF in their operations and have made substantial investments in equipment (e.g., alkylation units that use HF as a catalyst in fuel production), safety processes (e.g., leak detection, water deployment to neutralize HF, and rapid de-inventory[1]), personnel, training, and incident response measures to comply with the many existing safety and environmental regulations and standards on HF. *Id.* ¶ 8. These investments are aimed at allowing facilities to properly manage and contain the risks of operating refinery equipment when using HF.

**B.    Plaintiffs Seek an Order Compelling EPA to Ban All Uses of HF by WSPA's Member Refineries.**

On February 11, 2025, Plaintiffs submitted a petition to EPA under TSCA Section 21(a) to "Prohibit the Use of Hydrogen Fluoride in Domestic Oil Refining" (the "Petition") to compel EPA to initiate a rulemaking under Section 6(a) of the statute. *See* Clean Air Council, et al., Petition, Docket No. 0102-0002 (Feb. 11,

---

[1] "Rapid de-inventory" refers to a system that allows a facility to quickly route hydrofluoric acid into an isolated vessel to prevent and minimize release.

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

2025), https://www.regulations.gov/document/EPA-HQ-OPPT-2025-0102-0002. Plaintiffs asserted that HF poses an "unreasonable risk of injury" to human health and the environment and urged EPA to "promptly commence a rulemaking to eliminate that unreasonable risk" by "ban[ning] refinery-related HF use." *Id.* at 2–3, 56 (citing 15 U.S.C. § 2620(b)(3)).

Over the following months, EPA undertook a careful, deliberate evaluation of the Petition. It received and reviewed public comments, assessed extensive scientific and technical submissions, and considered the economic and operational implications of the requested ban. EPA ultimately concluded that the Petition did not satisfy TSCA's criteria for the relief sought. Specifically, on May 15, 2025, after completing its extensive review, EPA denied the Petition, explaining that "the petitioners did not meet their burden . . . of establishing that it is necessary to issue a rule." 90 Fed. Reg. 20,575, 20,576 (May 15, 2025).

Rather than accept EPA's reasoned determination, Plaintiffs invoked the judicial review provision of TSCA Section 21(b)(4) and filed this lawsuit seeking to compel EPA to initiate the rulemaking it declined to undertake. *See* 15 U.S.C. § 2620(b)(4)(A) (allowing a "petitioner [to] commence a civil action in a district court of the United States to compel the [EPA] Administrator to initiate a rulemaking proceeding as requested in the petition").

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

C.    **The Litigation Is in the Early Stages.**

On July 8, 2025, Plaintiffs initiated this action by filing their complaint under TSCA Section 21—the same provision they invoked in their Petition. *See* Compl. After the complaint was served, EPA and Plaintiffs jointly sought and obtained multiple extensions of EPA's response deadline to allow time for discussions and case management. Most recently, on November 24, 2025, the parties submitted a joint stipulation extending EPA's deadline to respond to December 5, 2025, and establishing December 19, 2025 as the deadline for WSPA to seek to intervene. Dkt. 37.

## III. ARGUMENT

Plaintiffs seek a judicial order that would compel EPA to ban a chemical integral to the continued operation of multiple WSPA member refineries. The interests of WSPA and its members are therefore squarely at stake in this litigation, and WSPA's participation is essential to ensuring those interests are fully and adequately represented. Because the outcome of this case may profoundly affect the operational and economic vitality of refineries that rely on HF, WSPA easily satisfies the standards for intervention as of right under Rule 24(a) and, at a minimum, the requirements for permissive intervention under Rule 24(b).

A.    **WSPA Is Entitled to Intervene as of Right.**

Federal Rule of Civil Procedure 24(a) requires courts, "[o]n timely motion," to permit intervention by anyone who "claims an interest relating to the property or

5

transaction that is the subject of the action" and who "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a).

Courts have long emphasized that Rule 24(a) must be construed "broadly in favor of proposed intervenors," recognizing that the rule "serves both efficient resolution of issues and broadened access to the courts."  *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002).  Consistent with that principle, courts "follow practical and equitable considerations" when evaluating motions to intervene.  *Kelly v. Ironshore Indem., Inc.*, No. 2:22-cv-05178-MEMF-JEMx, 2023 WL 12022685, at *3 (C.D. Cal. Sept. 15, 2023) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011)).

Courts apply a four-part test to determine whether a proposed intervenor satisfies the requirements for intervention as of right:  (1) the applicant must assert a "significantly protectable interest relating to the property or transaction which is the subject of the action"; (2) the applicant must show that the disposition of the action "may as a practical matter impair or impede its ability to protect that interest"; (3) the motion must be timely; and (4) the applicant's interests must not be adequately represented by the existing parties.  *Wilderness Soc'y*, 630 F.3d at 1177 (cleaned up).  In evaluating these factors, courts take a liberal, pragmatic approach. They are required to "take all well-pleaded, nonconclusory allegations in the motion

to intervene, the proposed complaint or answer in intervention, and declarations

supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr.*

*for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

### 1. WSPA Is a Key Stakeholder with Significantly Protectable Interests.

A proposed intervenor demonstrates a significantly protectable interest when

its asserted interest is "protectable under some law and . . . there is a relationship

between the legally protected interest and the claims at issue." *Citizens for*

*Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)

(citation omitted).  This is a "practical, threshold inquiry," not a demanding one; the

moving party need not establish a "specific legal or equitable interest." *Id.* (citation

omitted).  Rather, the "interests test" exists to facilitate resolution of disputes "by

involving as many apparently concerned persons as is compatible with efficiency

and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted).  The

relationship requirement is satisfied so long as "the resolution of the plaintiff's

claims actually will affect the applicant." *City of Los Angeles*, 288 F.3d at 398

(citation omitted).

WSPA easily meets this standard.  WSPA, through its member refineries, has

a direct and substantial legal and economic interest in the continued transportation,

storage, and use of HF at refineries—i.e., the specific activities Plaintiffs seek to ban

through this lawsuit.  As an association representing companies that own and

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

operate refineries throughout the Western United States, WSPA's interests are coextensive with those of its members. *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 810, 821 n.3 (noting the "implicit" overlap between the associational standing doctrine and the "interest" analysis under Rule 24(a)(2)); *see also* Decl. of Jodie Muller.

As set forth in the accompanying Declaration of Western States Petroleum Association, WSPA's member refineries use HF in their alkylation units to manufacture high-octane gasoline. Decl. of Jodie Muller ¶ 9. Plaintiffs' requested relief—a ban on HF—would impose severe and immediate operational and financial consequences.[2] Indeed, "the cost of replacing . . . HF alkylation unit[s] with . . . sulfuric acid alkylation unit[s]" would require capital expenditures so substantial that "in many cases, [they would] come close to the entirety of a refinery's value."[3]

2.    The Disposition of This Action Would Impair WSPA's Interests.

The Ninth Circuit follows the Rule 24 advisory committee's guidance that, "[i]f a[] [potential party] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (citation omitted).

---

[2] *See also* Supplemental Comments of American Fuel & Petrochemical Manufacturers (AFPM) and American Petroleum Institute (API) (Apr. 7, 2025), https://www.regulations.gov/document/EPA-HQ-OPPT-2025-0102-0005.
[3] *Id.* at 22.

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

This standard is intentionally pragmatic and focuses on real-world consequences, not abstract legal impairments.

Here, those consequences are unmistakable. As described above, WSPA member refineries rely on HF to produce gasoline that keeps the economy running. Were Plaintiffs to prevail and EPA were compelled to ban refinery-related HF use, WSPA's members would face immediate and severe impacts.

### 3. This Motion Is Timely.

WSPA's motion is timely because the litigation is in an early stage and no party would be prejudiced by WSPA's prompt intervention. Timeliness under Rule 24 is a "flexible" concept guided by "equitable considerations." *Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005). The "mere lapse of time, without more, is not necessarily a bar to intervention." *Woods v. Cnty. of Los Angeles*, No. 2:20-CV-04474-AB (MAAx), 2022 WL 19829548, at *4 (C.D. Cal. Mar. 14, 2022) (quoting *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984)).

Courts evaluate timeliness under Rule 24(a) by considering three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (citation omitted). Each factor confirms that WSPA's motion is timely.

*First*, WSPA seeks intervention at a very early stage of the litigation, well before the Court has "substantively—and substantially—engaged the issues" in the

9

case. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) (quoting *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997)). No discovery has occurred, and the Court has not addressed the merits. This motion comes just two weeks after EPA filed its motion to dismiss. And the Ninth Circuit has previously held that motions to intervene are timely even *after* an answer is filed, *Citizens for Balanced Use*, 647 F.3d at 897, and in exceptional cases, even post-judgment, *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1395 (9th Cir. 1992). WSPA's motion is filed at an earlier and less developed stage than in those cases.

*Second*, WSPA's intervention will not prejudice any existing party. WSPA has worked cooperatively with Plaintiffs and the United States to ensure that its participation would not disrupt the existing schedule. The parties jointly stipulated to adjust briefing deadlines—including establishing December 19, 2025, as the deadline for WSPA's intervention—and this Court adopted the schedule. Dkt. 37. Both Plaintiffs and EPA do not oppose WSPA's motion. Intervention under these circumstances cannot reasonably be viewed as prejudicial.

*Third*, the "reason and length of delay" also favors a finding of timeliness. Courts assess this factor by examining the date on which the applicant "should have been aware" its interests were not adequately protected. *League of United Latin Am. Citizens*, 131 F.3d at 1304 (citation omitted). WSPA has moved expeditiously: it seeks intervention shortly after EPA filed its first responsive pleading and as

10

promptly as practicable after learning of the action and coordinating with its geographically dispersed member refineries.

4.    The Existing Parties Do Not Adequately Represent WSPA's Interests.

Neither Plaintiffs nor EPA adequately represents WSPA's interests in this litigation.  Three factors determine adequate representation: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect."  *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822.  WSPA's burden here is "minimal":  it need only show that the existing parties' representation "may be" inadequate, meaning that EPA is not likely to "advance the same arguments as Applicants."  *Id.* at 823, 824.  Importantly, there is no presumption of aligned interests between the government and a private party simply because "both entities occupy the same posture in the litigation."  *Citizens for Balanced Use*, 647 F.3d at 899 (citation omitted).

To begin, Plaintiffs plainly do not represent WSPA's interests.  Plaintiffs seek the very relief that would directly harm WSPA's members: a judicial order compelling EPA to ban HF use in refineries.  Plaintiffs' interests are not only misaligned with WSPA's—they are directly adverse.  Compl. ¶¶ 95, 112.

EPA also cannot adequately represent WSPA's interests. EPA regulates WSPA's members' use of HF. Thus, EPA's institutional mission and responsibilities differ necessarily from those of privately operated refineries. The Ninth Circuit has recognized that a federal agency "cannot be expected . . . to protect the[] private interests" of trade associations in the context of a trade association seeking to intervene as a defendant. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823; *see also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) ("[W]e have often concluded that governmental entities do not adequately represent the interests of aspiring [private] intervenors.").

Those divergences are especially pronounced here. EPA does not share WSPA's members' economic or operational interests, nor does it have day-to-day experience transporting, storing, and using HF in refinery settings. WSPA members' HF operations are subject to (1) several other mandatory regulatory schemes that EPA has no responsibility for implementing and enforcing and (2) voluntary industry standards. *See, e.g.*, 29 C.F.R. § 1910.119 (Process Safety Management requirements for highly hazardous chemicals, including HF, as administered by the Occupational Safety and Health Administration); 49 C.F.R. Part 172 (hazardous materials handling requirements, as administered by the U.S. Department of Transportation); API RP-751 (the American Petroleum Institute's Recommended Practice for the Safe Operation of Hydrofluoric Acid Alkylation Units, which is followed by refineries across the country). This web of

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

regulatory and technical considerations bears directly on the TSCA inquiry into whether HF presents an "unreasonable risk of injury" to human health or the environment. Yet EPA—unlike WSPA—cannot speak to how these overlapping safety regulatory regimes function in practice at refinery sites, nor to the operational realities and economic consequences of an HF ban.

WSPA, by contrast, can offer this critical expertise and perspective to aid this Court, which existing parties will not and cannot provide. Indeed, in the motion to dismiss Plaintiffs' complaint that WSPA is concurrently filing with this motion to intervene, WSPA is advancing arguments that are sometimes different than or in addition to EPA's arguments for dismissal in its motion to dismiss. *See* Dkt. 39-1. Because WSPA meets the "minimal" showing that its interests "may be" inadequately represented, the adequacy requirement under Rule 24(a) is satisfied.

## B. Alternatively, WSPA Satisfies the Standard for Permissive Intervention.

In addition, permissive intervention under Rule 24(b) is also appropriate. Rule 24(b) authorizes courts to permit intervention where the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Permissive intervention should be granted when three factors are present: "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

(9th Cir. 2011) (citation omitted).  "The existence of a common question is liberally construed."  *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Morrow-Meadows Corp.*, No. CV16-7454-MWF(ASx), 2017 WL 11631998, at *2 (C.D. Cal. Aug. 1, 2017) (internal quotation marks omitted).

WSPA meets each of these criteria.  *First*, this case arises under federal law, and WSPA asserts no new claims; it seeks only to defend against Plaintiffs' Section 21 TSCA challenge.  In such circumstances, "the jurisdictional concern drops away."  *Freedom from Religion Found., Inc.*, 644 F.3d at 844.  *Second*, as explained above, WSPA's motion is timely and will not prejudice either current party to the litigation—indeed, the parties jointly stipulated to a schedule anticipating WSPA's intervention.  *Third*, WSPA's defenses share multiple common questions of law and fact with issues already presented in this litigation. Plaintiffs' claims turn on whether HF use in refineries presents an "unreasonable risk of injury" under TSCA and whether EPA acted lawfully in denying the Petition. WSPA intends to address these same questions, drawing on its members' operational experience and technical expertise.  Its participation will therefore assist the Court in resolving the core issues before it.

Because WSPA satisfies all three elements of Rule 24(b) and its participation will contribute to the just and efficient resolution of this action, the Court should permit WSPA to intervene as of right or, in the alternative, should grant WSPA's motion for permissive intervention.

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

1

## IV.  CONCLUSION

For these reasons, Proposed Intervenor WSPA respectfully requests that the Court grant this unopposed motion to intervene.

DATED: December 19, 2025                    Respectfully Submitted


                                            By: */s/ Jason S. Mills*

                                            Jason S. Mills (SBN 225126)
                                            jason.mills@morganlewis.com
                                            MORGAN, LEWIS & BOCKIUS LLP
                                            300 S. Grand Avenue
                                            Los Angeles, CA 90071
                                            Telephone: +1 213 612 7387
                                            Facsimile: +1 213 612 2501

                                            Justin A. Savage (*pro hac vice*
                                            forthcoming)
                                            jsavage@sidley.com
                                            SIDLEY AUSTIN LLP
                                            1501 K Street, N.W.
                                            Washington, DC 20005
                                            Telephone: +1 202 736 8000
                                            Facsimile: +1 202 736 8711

                                            Nima H. Mohebbi (SBN 275453)
                                            nima.mohebbi@sidley.com
                                            SIDLEY AUSTIN LLP
                                            1999 Avenue of the Stars
                                            Los Angeles, CA 90067
                                            Telephone: +1 310 595 9500
                                            Facsimile: +1 310 595 9501

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Brooklyn Hildebrandt (SBN 350707)
bhildebrandt@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 896 6000
Facsimile: +1 213 896 6600

16

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Proposed Intervenor, certifies that this brief contains 3,263 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 19, 2025          /s/ Jason S. Mills
                                  Jason S. Mills

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of December, 2025, a true and complete copy of the foregoing has been filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on counsel of record via the Court's electronic filing system.

<i>/s/ Jason S. Mills</i><br>
Jason S. Mills

MEM. OF POINTS AND AUTHORITIES IN SUPP. OF UNOPPOSED MOTION TO INTERVENE