UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SACV 25-01473-MWF(DFMx)**          **Date:  June 25, 2026**

Title:    Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

Present:    The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk:<br>Rita Sanchez | Court Reporter:<br>Not Reported |
| Attorneys Present for Plaintiff:<br>None Present | Attorneys Present for Defendant:<br>None Present |

**Proceedings (In Chambers):**          ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [53]; INTERVENOR'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [54]

Before the Court are two motions to dismiss. The first motion was filed by Defendants U.S. Environmental Protection Agency ("EPA"); Lee Zeldin, Administrator of the EPA; and Nancy Beck, Principal Deputy Assistant Administrator for the Office of Chemical Safety and Pollution Prevention; on February 20, 2026. (Docket No. 53 ("EPA Motion")).  The second motion was filed by Defendant Intervenor Western States Petroleum Association ("WSPA") on the same date. (Docket No. 54 ("WSPA Motion")).

Plaintiffs Clean Air Council, Communities for a Better Environment, and Natural Resources Defense Council, Inc., filed an omnibus Opposition on April 10, 2026.  (Docket No. 58).  Defendants and Intervenor filed their Replies on May 15, 2026.  (Docket Nos. 60 ("EPA's Reply"), 59 ("WSPA Reply")).

The Court has read and considered the papers on the motions and held a hearing on **June 10, 2026.**

The Motion is **GRANTED** ***with leave to amend.***  Plaintiffs have failed to allege a "'credible threat' that a probabilistic harm will materialize" sufficient to establish an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SACV 25-01473-MWF(DFMx)**           **Date:  June 25, 2026**
Title:        Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

actual or imminent injury for Article III standing purposes.  *See Natural Resources Defense Council v. U.S. EPA,* 735 F.3d 873, 878 (2013).

## I.      BACKGROUND

### A.      Procedural Background

On February 11, Plaintiffs submitted a citizen petition to the EPA (the "Petition") under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2620(a) ("Section 21(a)").  (Amended Complaint ("FAC") (Docket No. 50) ¶¶ 1, 117).  The Petition asked the EPA to begin rulemaking under § 2605(a) of the TSCA ("Section 6(a)") to "eliminate the grave and unreasonable risks … to public health and the environment" posed by the use of a chemical, hydrogen fluoride ("HF") that is commonly used by refineries.  (*See* ¶¶ 117, 2-3).

On May 12, 2025, the EPA denied the Petition for rulemaking.  (*Id.* ¶ 1).  Plaintiffs then initiated this action under the judicial review provision of § 2620(b)(4)(A) of the TSCA.  (*Id.*).

### B.      Factual Background

"HF is an extremely corrosive and reactive chemical that readily penetrates and destroys skin and tissue," so much so that even a small amount of exposure to 1% of a human's skin can be fatal.  (FAC ¶ 2).  Plaintiffs allege that the danger posed by HF exposure is heightened by the putative difficulty in diagnosing and treating symptoms of exposure.  (*Id.* ¶ 2).

Yet, HF is a common chemical used by at least 40 oil refineries in the United States to "boost fuel octane."  (*Id.* ¶ 3).  Accordingly, Plaintiffs allege that these refineries "use, store, and transport significant volumes of HF," which in turn poses a danger of accidental release.  (*Id.*).  Per EPA requirements, refineries therefore submit Risk Management Plans ("RMPs") to the Agency detailing the possible ramifications of accidental HF releases.  (*Id.* ¶ 73).  When liquid HF is exposed to air that is above

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 25-01473-MWF(DFMx)          Date:  June 25, 2026

Title:      Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

HF's boiling point of 67.1 degrees Fahrenheit, it "form[s] a ground-hugging, spreading cloud."  (*Id.* ¶ 65).  As detailed in the FAC, the RMPs assert a risk to hundreds of thousands of people living around refineries were the worst-case scenario to occur, which the EPA has defined as the release of all HF "held in a single vessel" or pipe that then vaporizes and spreads through the air.  (*Id.* ¶¶ 74-79).  But Plaintiffs also assert a risk to surrounding populations from even "substantially smaller" releases, insofar as they can result in shelter-in-place and evacuation orders.  (*Id.* ¶¶ 4, 101).

Plaintiffs also point to a danger in transporting HF, as there is a similar possibility of release of HF if there is an accident on the road or rail.  (*Id.* ¶¶ 80-98).  In the Petition to the EPA, Plaintiffs presented analysis of the effects of an accidental release during transit and unloading.  (*Id.* ¶¶ 82-85).  Again, the analysis estimated a risk to hundreds of thousands of people.  (*Id.* ¶ 85).

Plaintiffs also attach exhibits to the FAC summarizing historical "HF-release events" as well as "near miss" events where fires or explosions occur that nearly, but did not, cause the release of HF.  (*Id.* ¶ 107; Exhibits 1-2).  Plaintiffs allege that the old age of many refineries and the extreme weather caused by climate change will likely lead to additional release events, as both of these can potentially affect the systems that hold or transport HF.  (*Id.* ¶¶ 106, 114-115).

Plaintiffs bring this suit on behalf of their members, all of whom live within a short distance of oil refineries in Los Angeles, California; Philadelphia, Pennsylvania; and Chicago, Illinois.  (*Id.* ¶¶ 17-31).

## II.    **LEGAL STANDARD**

"Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction.  As a result, the plaintiff bears the burden of proving that the case is properly in federal court." *Brooke v. Kashl Corp.*, 362 F. Supp. 3d 864, 871 (S.D. Cal. 2019) (citing *McCauley v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SACV 25-01473-MWF(DFMx)**          **Date:  June 25, 2026**
**Title:**        Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

A jurisdictional attack under Rule 12(b)(1) may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the complaint's allegations must be accepted as true.  *Id.*  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  "The court need not presume the truthfulness of the plaintiff's allegations under a factual attack."  *Brooke v. Superb Hosp., LLC*, No. 20-0103, 2021 WL 1173208, at *4 (E.D. Cal. Mar. 29, 2021) (citing *Wood v. City of San Diego*, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011)).

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 181 (2000).

## III.  DISCUSSION

The EPA and WSPA Motions argue both that Plaintiffs (1) do not have an injury-in-fact sufficient to confer standing and (2) have not sufficiently alleged their claims under Rule 12(b)(6).  Because the Court holds that Plaintiffs have not alleged an adequate injury-in-fact, the Court does not reach the Rule 12(b)(6) arguments.

### A.     Standing

The EPA and WSPA both assert that Plaintiffs' alleged injuries are too speculative, as they rely on an "attenuated chain of possibilities" before the harm occurs.  (*See* EPA Motion at 13; WSPA Motion at 16 (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 410 (2013)).  Specifically, they urge that the injuries to Plaintiffs' health and wallet would only occur in the event of a rather large-scale accidental release of HF, which would, in turn, only occur because of a cascade of several events.  As described in the EPA Motion, to find injury:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SACV 25-01473-MWF(DFMx)**               **Date:  June 25, 2026**
Title:        Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

"the Court must infer that (1) an accident will happen at an oil refinery near Plaintiffs' members; (2) mitigation measures in place by the refinery will fail; (3) the accident will result in the release of HF; (4) response actions will not contain the release; (5) the amount of HF that is released is significant enough to move beyond the confines of the refinery; (6) weather conditions are such that the HF will spread into the Plaintiff members' communities; and (7) the HF release will injure Plaintiffs' members, their family members, communities, and the local environment."

(EPA Motion at 13).

Plaintiffs respond that Defendants' arguments distort the level of certainty required to find an injury-in-fact under Article III standing case law, and that in any event, "all the conditions needed for harm to occur exist" at this moment.  (Opp. at 23-28; 18).  Moreover, Plaintiffs emphasize that catastrophic releases of HF are not required to cause injury, but rather that small amounts of exposure can cause physical injury — and even the "near miss" events can result in evacuations and shelter-in-place orders that economically harm Plaintiffs' members.  (Opp. at 20-21).

The Supreme Court has explained that "'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient."  *Clapper,* 568 U.S. at 409 (emphasis in original) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990)).  The parties further both cite to the standard articulated by the Ninth Circuit in *Natural Resources Defense Council v. U.S. EPA,* 735 F.3d 873, 878 (2013) (hereinafter *NRDC*) "that an injury is 'actual or imminent' where there is a 'credible threat' that a probabilistic harm will materialize."  Yet, the Ninth Circuit has also recognized that "[t]hreatened environmental harm is by nature probabilistic," and that litigants "need not wait" until the threatened harm occurs before they have a "concrete dispute[]" that is redressable by a federal court.  *See Central Delta Water Agency v. U.S.,* 306 F.3d 938, 948 (9th Cir. 2002) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SACV 25-01473-MWF(DFMx)          Date:  June 25, 2026**
**Title:      Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.**

*Friends of the Earth, Inc., v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 159-60
(4th Cir. 2000)).

The parties both cite to a number of cases that discuss injury-in-fact where the
plaintiffs have alleged harm flowing from threats to the environment.  After reviewing
these cases, the Court concludes that Plaintiffs have not alleged a credible threat that a
probabilistic harm will materialize, and thus they have not established standing.  *See*
*NRDC,* 735 F.3d at 878.  In view of the case law, the Court concludes that additional,
specific allegations are required to confer standing on Plaintiffs.

Two cases in particular inform this view, so the Court will summarize them first.
To start with the case that articulates the standard used here, in *NRDC* the appellant
challenged the EPA's determination that "use of [a] pesticide … will not cause any
unreasonable adverse effect on the environment."  735 F.3d at 876.  The applicant
seeking to use the pesticide sought to apply it to "manufactured textiles such as
clothing, blankets, and carpet."  *Id.* at 875.  But the court recognized that given the
"ubiquity of textiles and the lack of public information concerning the chemical
treatments applied to them[,]" it would be "nearly impossible for NRDC members to
eliminate [the treated] textiles from their children's lives."  *Id.* at 878.  The court
distinguished that factual scenario from the facts in the seminal case *City of Los*
*Angeles v. Lyons,* 461 U.S. 95 (1983), observing that the children's exposure to the
pesticide was "far more likely to materialize given the wide range of proposed uses of
the product" than the "low" probability that Lyons would be injured by a police
chokehold in the future.  *Id.* at 878-79.  Accordingly, "because the probability of
exposure to the risk of harm" from the pesticide use "is quite high," NRDC's members
had demonstrated a "credible threat" of exposure and thus a sufficient injury.  *Id.* at
879.

In the second case, *San Luis Obispo Mothers for Peace v. United States Nuclear*
*Regulatory Commission,* 100 F.4th 1039, 1053-55 (9th Cir. 2024), the Ninth Circuit
analyzed standing with respect to the continued operation of a nuclear energy facility
beyond its approved license term.  The court rejected the appellees' argument that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 25-01473-MWF(DFMx)          Date:  June 25, 2026
Title:      Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

risk of harm was speculative given that the appellee itself "recognized the age-related degradation of nuclear facilities" that did not exist at the time of the original approval of the license term, forty years earlier.  *Id.* at 1054.  The court highlighted that it was nearly certain that the nuclear power units would not be approved for a renewed license prior to the old license expiring, and thus there was a credible risk of harm from a possible release of radioactive materials that could affect those living in close proximity to the site.  *Id.* at 1054-55.  Because the original license would certainly expire before renewal was approved, the Ninth Circuit concluded that the possible harm "[did] not lie at the end of a highly attenuated chain of possibilities."  *Id.* at 1055 (internal citations and quotations omitted).

To begin, in both of these Ninth Circuit cases there were additional factual allegations that supported the probability of the putative harm materializing and affecting plaintiffs.  In *NRDC,* it was the "ubiquity" of the possibly exposed textiles and the resulting near certainty that children would be exposed to them.  *See* 735 F.3d at 878.  In *San Luis Obispo,* it was the conceded fact that the facilities had degraded from age, coupled with another near-certain event that the original license would expire and the plant would continue to operate without renewed approval.  *See* 100 F.4th at 1054-55.  Here, while Plaintiffs have generally alleged "aging infrastructure," (*see* FAC ¶¶ 15, 106, 116), there is simply not enough factual matter in the FAC supporting the allegation that "aging infrastructure" inherently makes the risk of release of HF more likely.  Beyond these conclusory allegations, there is only one anecdote about a "fifty-year-old pipe ruptur[ing]" at a refinery in Philadelphia, and Plaintiffs represented at the hearing that the pipe's age was the cause of the leak.  (*See id.* ¶ 11).  These allegations are not enough to plausibly support the inference that Plaintiffs' members face a credible threat of a release of HF.  *See Eclectic Props. East, LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 995 (9th Cir. 2014) ("plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility'") (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).

Plaintiffs also raised two cases at the hearing in addition to those discussed above that they argued support a finding of standing at this stage.  In *Ocean Advocates*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

**Case No.  SACV 25-01473-MWF(DFMx)          Date:  June 25, 2026**
**Title:        Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.**

*v. U.S. Army Corps of Engineers,* 402 F.3d 846, 859-60 (9th Cir. 2005)*,* the Ninth
Circuit reasoned that the plaintiff had established Article III standing in part because
"[r]ecord evidence suggests that the [disputed] dock extension risks increased tanker
traffic" and thus a "corresponding increase in the risk of an oil spill[,]" which would
harm the plaintiff's members' aesthetic and recreational enjoyment of an area.  Beyond
the quoted assertion about the evidence in the record at the summary judgment stage,
however, the Ninth Circuit did not elaborate on the type of evidence that was
persuasive to the panel when considering the issue.  It is thus difficult to agree with
Plaintiffs that *Ocean Advocates* should dictate the outcome of this Motion against the
detailed reasoning found in *NRDC* or *San Luis Obispo*.

    In the second case cited by Plaintiffs at the hearing, *Eng v. United States
Environmental Protection Agency,* 172 F.4th 747, 750 n.1 (9th Cir. 2026), the court
held in a footnote that while standing was not challenged by the parties, Eng had
standing to bring suit.  Eng's challenge was to the issuance of a permit that he argued
was made in error due to alleged "deficiencies in the Refinery's operating permit" that
"put him at an increased risk of an environmental calamity" and that a release of
chemicals (including HF) could "conceivably threaten residents within several miles
from the facility."  *Id.*  But again, Eng alleged that there was an "increased risk" of
release of chemicals due to the deficiencies in permitting requirements that he
identified.  *See id.*  That same link leading to an inference of increased risk of release is
missing here, save for the conclusory allegations of aging infrastructure.

    Similar to the "aging infrastructure" allegations, Plaintiffs also allege that the
possibility of unrelated refinery accidents (the so-called "near miss events") and
worsening extreme weather events caused by climate change increase the likelihood
that HF will accidentally be released into the atmosphere.  (FAC ¶¶ 15, 116).  But both
the climate change and near miss theories rely on an event occurring that cannot be
predicted to occur with any certainty:  accidental fires or explosions; or extreme
flooding, heat waves, or deep freezes.  (*See* FAC ¶ 114).  The chain of inferences
required to reach injury to Plaintiffs' members is simply too attenuated at that point, as
it would require a credible threat that such a catastrophic and unrelated accident or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.  SACV 25-01473-MWF(DFMx)           Date:  June 25, 2026**

**Title:       Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.**

phenomena would occur, ***and*** that it would occur in some close proximity to the HF storage systems.  To use the analogy from *NRDC,* such a possibility of a refinery accident or natural disaster damaging HF storage systems is more akin to the low probability in *Lyons* that one would have a second encounter with the police that would result in a chokehold.  *See NRDC,* 735 F.3d at 878-79.

But even taking as true the idea that an accidental release could occur due to aging infrastructure, near-miss events, or extreme weather events, the risk of rather large-scale leaks that are sufficient to harm Plaintiffs' members appears to be an even more tenuous possibility.  The Court notes that Plaintiffs' own documentation of the refinery-related incidents where HF was actually released (as opposed to near miss scenarios) only resulted in any injury to people outside of the refinery, like Plaintiffs' members, in rare circumstances.  (*See* Ex. 1 to FAC).  In Plaintiffs' Exhibit 1 to the FAC, the Court observes that out of 79 listed incidents of HF release from the past 40 years, only seven had documented effects on the nearby residential population, and even fewer of them resulted in physical injury.  *See id.*  The Court does not minimize the impact of these seven events, but only refers to this number to explain why it appears that release of HF to an extent and in a manner that harms Plaintiffs' members appears to be quite rare.  Rather, it appears that the vast majority of releases result in either no documented harm to humans, or they result in harm to refinery workers presumably within the immediate area of the refinery.  Again, the Court does not minimize harm to refinery workers, but Plaintiffs' members here are not refinery workers.

To put a finer point on it, the Court agrees with the EPA and WSPA that the allegations in the FAC do not support the idea that even if there were a release of HF, the release would spread beyond the refinery fence and cause physical or economic harm to Plaintiffs' members.  (*See* EPA Motion at 17-18; WSPA Motion at 17-19).

In urging the Court to hold that a credible threat of harm exists to those beyond the refinery fence, Plaintiffs point to the "refineries' poor safety records" as reason to infer that if there is an accidental release of HF, it will spread to Plaintiffs' members'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

**Case No.  SACV 25-01473-MWF(DFMx)            Date:  June 25, 2026**
Title:        Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

neighborhoods.  (Opp. at 24).  But again, there are simply no factual allegations in the FAC supporting the idea that these refineries have poor safety records, beyond the conclusory allegation that there has been a "failure to implement best practices" relating to these systems.  (FAC ¶ 116).

While Plaintiffs repeatedly cite *Public Watchdogs v. Southern California Edison Company,* CV 19-1635 JLS (MSB), 2019 WL 6497886 (S.D. Cal. Dec. 3, 2019) for support on this point, that case only underscores that Plaintiffs' allegations regarding putative safety issues do not pass muster for standing purposes.  In *Public Watchdogs,* the district court analyzed standing as to plaintiffs who lived nearby to nuclear power plants and alleged possible injuries from release of radioactive materials.  *Id.* at *1. Plaintiffs there pointed to the failure of the Nuclear Regulatory Commission ("NRC") to exercise oversight in several instances, including a failure to perform seismic hazard assessments; a failure to penalize utilities for violating rules and regulations; and misuse by the utilities-defendants of billions of dollars in federal funds.  *Id.* at *2. Perhaps most importantly, the plaintiffs there also alleged that NRC allowed utilities to write their own decommissioning plans, which led to the use of an improper containment system for spent nuclear fuel.  *Id.*  The plaintiffs made detailed allegations regarding the deficiencies with the containment system, including the placement of the containment site and the canisters used by the system to store the spent nuclear fuel. *Id.*  Based on these allegations, the court held that the plaintiffs had sufficiently alleged injury-in-fact as to their members from a potential leak of radioactive material.  *Id.* at *7.

In the Opposition, Plaintiffs argue that *Public Watchdogs* assists them because the same "deadly consequences" of exposure are present here, along with the same poor safety records.  (Opp. at 21-22).  At the hearing, Plaintiffs further urged that they have made allegations regarding the failure of the Chemical Safety Board to oversee refineries' storage of HF.  But the Court disagrees.  The FAC contains three anecdotes in the Exhibits listing releases and near miss events where the Chemical Safety Board "lacked the budget" or "the personnel" to complete an investigation as to three HF releases, but beyond that there is no allegation or even a conclusory assertion that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SACV 25-01473-MWF(DFMx)**          **Date:  June 25, 2026**
Title:       Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

Chemical Safety Board has failed to oversee the use of HF.  (*See* FAC at Ex. 1, ¶ 39; Ex. 2, ¶¶ 22, 57).  Indeed, there were two other anecdotal accounts listed in these same exhibits of HF releases and near miss events where the Chemical Safety Board ***did*** investigate.  (*Id.* at Ex. 2, ¶¶ 60, 69).  The Opposition, moreover, confirms the conclusory nature of these putative safety allegations, simply pointing to the anecdotes regarding the releases that have occurred and allegations in the FAC stating that the refineries' mitigation systems "are particularly failure prone[,]" without additional detail.  (*See* Opp. at 22-23 (citing to a single event from 2015 and FAC ¶¶ 11, 113-14)).  The court's finding of likelihood of harm in *Public Watchdogs* was premised on much more extensive allegations supporting the asserted danger of the containment system and the failure of the government to oversee the site, as detailed above.

Finally, at the hearing, Plaintiffs argued that the Court should not base the conclusions here on Defendant and Intervenor's arguments that other regulations police the use of HF adequately, and thus there is no credible threat of harm, citing to the Ninth Circuit's recent opinion in *Alaska Community Action on Toxics v. U.S. Environmental Protection Agency,* 175 F.4th 1169, 1179-80 (9th Cir. 2026).  The Court here clarifies that such an argument is not the basis for this ruling, and does not mean to suggest that refineries' compliance with certain regulations will take away a basis for standing as a matter of law.  Rather, as discussed extensively above, the crux of the issue here is that the FAC does not contain allegations that there is a credible threat of the release of HF that could harm Plaintiffs' members living outside the refinery.  While the Court need not decide this issue now, if Plaintiffs could allege a quality issue with the tanks beyond conclusory assertions of age, for example, such allegations could be persuasive regardless of the refineries' compliance with other safety regulations.

Plaintiffs concede, as they must, that each step in the chain leading to the alleged injury to their members must be plausible.  (*See* Opp. at 25 (citing *Maya v. Centex Corp.,* 658 F.3d 1060, 1070 (9th Cir. 2011)).  But the FAC only establishes that nearby residents have historically rarely been harmed by the release of HF by refineries, and there is very little in the FAC supporting the idea proffered by Plaintiffs that there is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.  SACV 25-01473-MWF(DFMx)**          **Date:  June 25, 2026**

Title:        Clean Air Council, et al. v. U.S Environmental Protection Agency, et al.

---

some increased "credible threat" of exposure to HF in the future due to aging infrastructure, climate change, or failure to implement safety practices.  Without more to establish a credible threat that Plaintiffs' members will be harmed by an accidental HF release, Plaintiffs' allegations do not confer standing.


## B.      <u>Leave to Amend</u>

Rule 15 requires that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The Supreme Court identified five factors a court should consider when deciding whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended its complaint.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Of these, "the consideration of prejudice to the opposing party carries the greatest weight." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021) (unpublished) (same).

It is not clear that granting leave to amend is appropriate when a successful motion is brought pursuant to Rule 12(b)(1) instead of Rule 12(b)(6), although here the Court similarly assumes the truth of the allegations.  The Court is also somewhat skeptical that Plaintiffs can amend their allegations to demonstrate injury-in-fact without drastically different allegations in the next amended complaint.  Indeed, Plaintiffs have already amended their pleading once after an initial round of motions to dismiss, although Plaintiffs did not have the benefit of the Court's adjudication of the issues in that initial set of briefing.  (Stipulation and Order granting leave to amend as a matter of course (Docket Nos. 48, 49)).

However, the Court cannot determine as a matter of law at this point that amendment would be futile, and moreover, leave to amend will ensure that the record

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **SACV 25-01473-MWF(DFMx)**                    **Date:  June 25, 2026**
Title:      Clean Air Council, et al. v. U.S. Environmental Protection Agency, et al.

will be more complete for any future appeal.  The Court will therefore grant Plaintiffs ***one more chance*** to amend their complaint to address the standing issues discussed in this Order and any other potential deficiencies as raised in the Motion.

## IV.    CONCLUSION

The Motion is **GRANTED** ***with leave to amend***.  Plaintiffs may file a Second Amended Complaint ("SAC") by **July 22, 2026**.  Defendants shall respond to any SAC by **August 19, 2026**.  Any future successful motion to dismiss will be granted without leave to amend.  Failure to file a SAC will be construed as a decision to stand on the facts alleged in the FAC, and judgment will be entered accordingly.

IT IS SO ORDERED.